IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JM ENTERPRISES, INC., | : | No. 1:17-cv-1118 |
|     Plaintiff, | : | |
| | : | Hon. John E. Jones III |
| v. | : | |
| | : | |
| THE AMES COMPANIES, INC., | : | |
|     Defendant | : | |

## <u>MEMORANDUM</u>

### January 18, 2018

JM Enterprises, Inc., ("JM") brought this action against The Ames Companies, Inc. ("Ames") for patent infringement. Presently before the Court are cross Motions for Summary Judgment. For the reasons that follow, we shall grant Ames's Motion for Summary Judgment, (Doc. 39), and deny JM's Motion for Summary Judgment. (Doc. 42).

## I.   BACKGROUND

This is a tale of two snow shovels. JM[1] developed a snow shovel utilizing a bracket that connects the blade to the handle and obtained Patent No. 7,216,907 (the "907 Patent") for the shovel on May 15, 2007. (JM's Statement of Facts ¶ 4). Ames also sells snow shovels that use a bracket with similar features, which JM

---

[1] Technically, the company is not the inventor; an individual is. The individual applies for the patent and makes any necessary amendments during the application process, ultimately assigning ownership of the patent to a company. For our purposes, though, "JM" shall refer to both the company JM Enterprises, Inc., and the inventor who patented the shovel.

1

asserts infringes on its patent. Determining whether Ames's bracket infringes JM's patent depends on a clear understanding of what a patent "teaches," or the information contained within the patent. Patents are organized into several sections. Several of the sections are collectively termed the "specification," which includes an abstract, background, and summary of the invention; a description of the drawings of the invention, if there are any; and a detailed description of the preferred embodiment of the invention. The specification provides useful context for understanding the invention, including how to define certain terms, and what the inventor claims to be unique. The unique features of the invention are known as "claims" and are grouped at the end of the patent. Claims can be either independent or dependent. Independent claims stand alone and define the broadest scope of the patent, while dependent claims make reference to other claims in the patent and are narrower in scope. The 907 Patent has seven total claims, but only claims 1 and 7 are independent and are the primary focus of this dispute.

    In their patented iterations, claims 1 and 7 state as follows:

Claim 1:
A shovel, comprising:
an elongated shaft;
a bracket having a hollow cylinder formed to receive the shaft, a
    support member, and a support plate;
the support member having a concave arcuate bottom surface formed
    to receive a curved portion of a blade and a vertical edge that
    extends along the support plate;
the support plate being connected to the blade at a bottom edge;

the support plate having a plurality of support fins that extend from the hollow cylinder;
the support plate having a plurality of slots positioned between the fins; and
the support member receiving the blade at the concave arcuate bottom surface and being connected to the support plate at the vertical edge such that the support member is disposed between the support plate and blade in wedge fashion.

Claim 7:
A shovel, comprising:
an elongated shaft;
a bracket having a hollow cylinder formed to receive the shaft, a support member, and a support plate;
the support member having a concave arcuate bottom surface formed to receive a curved portion of a blade and a vertical edge that extends along the support plate;
the support plate being connected to the blade at a bottom edge;
the support member receiving the blade at a concave arcuate bottom surface and being connected to the support plate at the vertical edge such that the support member is disposed between the support plate and blade in wedge fashion
wherein the support plate is connected to the support fins on a side and connected to the blade and support member on an opposite side.

(Doc. 41-2, pp. 7, 8).

With this background in mind, we set forth the undisputed facts and procedural history of this action. JM filed a patent application for this bracket in January 2006. (JM's Statement of Facts, ¶ 3). After examining the application, the United States Patent and Trademark Office ("USPTO") rejected the application because the claim limitation of "a plurality of slots on the support plate positioned between the fins" was rendered obvious by prior patent designs. (*Id.* at ¶¶ 13, 14).

JM amended the application to overcome the USPTO's rejection. (*Id.* at ¶ 15). Later, the USPTO again rejected the application because claim 1 was anticipated by prior patent designs, (*Id.* at ¶¶ 16, 17), and again JM amended the application to overcome the rejection. (*Id.* at ¶ 18). Following the amendments, JM's application matured into a patent, as noted above.

Alleging that Ames's bracket infringes on its 907 Patent, JM initiated this lawsuit by filing a complaint on December 6, 2016, in the Southern District of Iowa, where JM is based. (Doc. 1). Ames, which is incorporated in Delaware and has its principal place of business in Camp Hill, Pennsylvania, filed a motion to dismiss for failure to state a claim, lack of personal jurisdiction, and improper venue. (Doc. 10). JM then filed an amended complaint, (Doc. 11), to which Ames again filed a motion to dismiss for lack of personal jurisdiction and improper venue. (Doc. 15). On May 26, 2017, JM moved to transfer the case to the Middle District of Pennsylvania, (Doc. 19), which was granted on June 13, 2017. (Doc. 20). Ames then filed its answer on August 23, 2017. (Doc. 27).

After a case management conference, we entered an order on August 30, 2017, setting a schedule for early dispositive motions. (Doc. 35). The parties opted to file cross summary judgment motions without engaging in discovery. (Docs. 39, 42). Both motions have been fully briefed, (Docs. 41, 44, 47, 49, 51, 52), and are ripe for our review.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a fact is "material" only if it might affect the outcome of the action under the governing law. *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 172 (3d Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court should view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences therefrom, and should not evaluate credibility or weigh the evidence. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

Initially, the moving party bears the burden of demonstrating the absence of a genuine dispute of material fact, and upon satisfaction of that burden, the non-movant must go beyond the pleadings, pointing to particular facts that evidence a genuine dispute for trial. *See id.* at 773 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). In advancing their positions, the parties must support their factual assertions by citing to specific parts of the record or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or

that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A court should not grant summary judgment when there is a disagreement about the facts or the proper inferences that a fact finder could draw from them. *See Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (citing *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982)). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205, 211 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 247-48) (internal quotation marks omitted).

## III. DISCUSSION

A claim of patent infringement can be proven in one of two ways: literal infringement or by the doctrine of equivalents.[2] *See Cephalon, Inc. v. Watson Pharmaceuticals, Inc.*, 707 F.3d 1330, 1340 (Fed. Cir. 2013). To prove literal infringement, every single claim must be present in the accused device. *Id.* ("If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law.") The doctrine of equivalents is more forgiving and asks whether "'the accused product or process contain[s] elements identical *or*

---

[2] In its motion for summary judgment, JM does not argue for the doctrine of equivalents, staking its success only on literal infringement. Ames's motion presents a non-infringement argument under both literal and equivalent analysis, to which JM responds. Therefore, we will consider the doctrine of equivalents in our analysis.

*equivalent to* each claimed element of the patented invention.'" *Id.* (quoting *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997)) (emphasis added).

The doctrine of equivalents is limited by another doctrine known as prosecution history estoppel. The United States Supreme Court describes prosecution history estoppel as "ensur[ing] that the doctrine of equivalents remains tied to its underlying purpose." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 734 (2002). That underlying purpose, the Court further explains, is to "hold the inventor to the representations made during the application process and to the inferences that may reasonably be drawn from the amendment." *Id.* at 737-38. Amendments the inventor makes to claim language during the examination process may bar the application of the doctrine of equivalents to that element if the patentee is unable to explain the reason for the amendment. *Id.* at 740. Furthermore, "when the court is unable to determine the purpose underlying a narrowing amendment – and hence a rationale for limiting the estoppel to the surrender of particular equivalents – the court should presume that the patentee surrendered all subject matter between the broader and the narrower language." *Id.* Therefore, "the patentee bears the burden of proving that an amendment was not made for a reason that would give rise to estoppel" and also bears the burden "of

showing that the amendment does not surrender the particular equivalent in question." *Id.*

Against this general legal backdrop, we analyze patent infringement in two steps. "The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). The first step is "a matter of law exclusively for the court." *Id.* at 970. The claims in a patent "do not stand alone" and "'must be read in view of the specification, of which they are a part.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (quoting *Markman*, 52 F.3d at 978).

JM argues that Ames's shovel literally infringes every one of JM's patented claims. The parties' briefs, however, focus on three particular claims related to the bracket: (1) a support member connecting to a support plate at a vertical edge, (2) a plurality of slots, and (3) a support plate connected to support fins on one side and a blade and support member on the opposite side. Consistent with the parties' briefing, we will concentrate on these three contested claims.

A.  **Support Member Connecting to Support Plate at Vertical Edge**

As noted earlier, we begin with claim construction. The claim at issue reads: "the support member … being connected to the support plate at the vertical edge."

8

(Doc. 41-2, p. 7). The support member and support plate are defined early in the patent as two of the three main components of the bracket (the third component being the hollow cylinder). We see this in claim 1, which states, "a bracket having a hollow cylinder formed to receive the shaft, a support member, and a support plate." (*Id.*). The specification further describes the support member as having "a pair of spaced members that are connected to the support plate and extend along the length of the cylinder. The spaced members have a vertical edge that extends along the support plate and an angled edge that extends outwardly from the open end [of the hollow cylinder] to the closed end." (*Id.*). Despite significant argument from both sides about the "vertical edge," the parties actually seem to agree that the support member attaches to the support plate on the support member's vertical side. The construction issue is what constitutes the support plate.

JM contends that the support plate and hollow cylinder are a single piece, whereas Ames argues that the support plate, hollow cylinder, and support member are individual structural components. We find Ames's interpretation more persuasive. The specification and the claims identify the bracket as having "a hollow cylinder, a support member, and a support plate." (*Id.*). JM points to other portions of the specification to suggest that the support plate and the hollow cylinder are to be considered one piece. JM first highlights the description of the bracket as "preferably made of molded plastic to form a single piece having a

9

hollow cylinder, a support member, and a support plate." (*Id.*). Elsewhere, the specification reads that the support plate "preferably has a triangular shape with a slot wherein the hollow cylinder is disposed." (*Id.*). JM argues that these portions of the specification present alternative compositions: one where the hollow cylinder is integral to the support plate and one where the hollow cylinder is disposed within the support plate. In either case, JM asserts, the hollow cylinder is part of the support plate. This argument does not hold up to scrutiny.

The first part of the argument suggests that a single-mold composition means the support plate and the hollow cylinder are one piece. The specification, however, contemplates a single molding for *all three* components, to include the support member. Logically, JM's argument would then mean that the support plate, the hollow cylinder, *and* the support member are all a single piece. If that were the case, then there would be no meaning to a description of how the support member connects to the support plate. The support member would *be* the support plate, just as the hollow cylinder *is* the support plate, under this theory. We simply cannot accept that as a logical construction.

The second part of the argument suggests that the hollow cylinder's insertion into a slot in the support plate renders them as one. Again, this is simply illogical. We see no distinction between inserting the hollow cylinder into a slot on the support plate and connecting the support member to the support plate at the vertical

10

edge. Yet, JM would have us construe the first connection as creating a single piece but not the second connection. There is simply no basis for reading the specification in this way. "[W]here a claim lists elements separately, the clear implication of the claim language is that those elements are distinct components of the patented invention." *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) (citations and quotations omitted). The claim and specification repeatedly refer to the support plate, hollow cylinder, and support member as separately identifiable components. We therefore construe this claim as indicating that the support member connects specifically to the support plate (and not the hollow cylinder) at the vertical edge.

Having construed the claim, we now must look at the Ames bracket to determine whether this claim is present. As noted earlier, such an infringement could be either literal or equivalent. On a theory of literal infringement, the allegation clearly fails. The Ames bracket also makes use of a support plate, hollow cylinder, and support member, but the support member attaches directly to the hollow cylinder, not the support plate.

As for infringement by the doctrine of equivalents, Ames argues that JM is barred by prosecution history estoppel. In its first rejection of the patent application, the USPTO stated that the application conflicted with a prior design patent (identified as the Meyers patent). The Meyers patent taught, in part, an

11

arcuate support plate shaped to receive a blade and "a pair of space members which extends along the cylinder." (Doc. 42-1, p. 40). JM amended claim 1 in response to the rejection, adding the underscored language:

> Claim 1
> …
> the support member having a concave arcuate bottom surface formed to receive a curved portion of a blade <u>and a vertical edge that extends along the support plate</u>;
> the support plate being connected to the blade <u>at the bottom edge; and</u>
> <u>the support member receiving the blade at the concave arcuate bottom surface and being connected to the support plate at the vertical edge such that the support member is disposed between the support plate and blade in wedge-like fashion.</u>

(*Id.* at p. 45). JM then argued, in support of its amendment: "Meyers teaches support members radiating from a hollow cylinder connected to an arcuate plate designed to be attached to the blade. Nowhere does Meyer teach a support member disposed between a support plate and the blade as is required by Applicant's claim 1." (*Id.* at p. 54). JM argues that the distinguishing feature of the amendment is that Meyers has the blade attach directly to the support plate, whereas claim 1 teaches a support member wedged between them. We find that to be plausible but incomplete. It does not explain why JM added specific language about the support member being connected to, and extending along, the support plate, especially when JM highlighted that Meyers teaches "support members radiating from a hollow cylinder." We find it reasonable to infer that JM intended to limit its claim to the support member connecting to the support plate, not the hollow cylinder. JM

12

has offered no argument or evidence to the contrary, other than to insist that the hollow cylinder is part of the support plate, which is a construction we have rejected.

For these reasons, we find that prosecution history estoppel bars the doctrine of equivalents under the circumstances. Although this alone defeats an infringement claim, for the sake of completeness we will consider the other two contested claims.

### B. Plurality of Slots

The second contested claim reads: "the support plate having a plurality of slots positioned between the fins." (Doc. 41-2, p. 7). As we did before, we begin with claim construction. The disputed word here is "slots." The specification, as JM points out, uses the term slots in two different contexts. The first is the slot in the support plate in which the hollow cylinder could be disposed. The second refers to the slots positioned between the fins on the support plate. JM argues that these references support two different definitions of slot: as a groove and as an opening. Merriam-Webster defines groove as "a long narrow channel or depression."[3] The dictionary further defines opening, quite obviously, as something that is open, that is to say something that "permits passage."[4] We agree here with JM's construction. The slot in which the hollow cylinder sits is akin to a groove. It

---

[3] https://www.merriam-webster.com/dictionary/groove
[4] https://www.merriam-webster.com/dictionary/open

is not fully open and is clearly designed as a channel that can receive and contain another component. By contrast, the slots between the fins are unequivocally openings. They appear as windows on the support plate. Thus, the specification supports both constructions for the term slot.

Turning to Ames's bracket, and beginning with literal infringement, we plainly see that the bracket as no openings that would constitute slots. JM, to its credit, does not argue to the contrary. We can therefore immediately dispense with that theory. JM asserts, however, that the Ames bracket has grooves. The Ames bracket has fins that project outward from the surface of the support plate. JM argues that the areas between the fins constitute grooves. In other words, JM suggests that the lower surface area naturally occurring between parallel fins projecting from the support plate are, in fact, grooves and, therefore, slots. We find this argument nonsensical. Obviously, the space between parallel fins will create a valley, of sorts. That is inevitable, but that does not make those spaces grooves. Furthermore, the claim clearly states that the slots are *positioned between* the fins. The language suggests that the slots are placed between the fins as a separately conceived design feature. By contrast, the so-called grooves on the Ames bracket are entirely *created by* the fins. These "grooves" would not exist absent the fins and are in no way a separate feature. Indeed, they are not a "feature" at all. We therefore find that a literal infringement theory fails here.

Ames again argues that infringement by the doctrine of equivalents also fails because it is barred by prosecution history estoppel. We find this to be moot, however. The doctrine of equivalents assumes some substituted element that is equivalent to a claimed element, even if not literally the same. There is no substituted element here. Ames does not substitute a feature that could be equivalent to slots; Ames simply does not include any slot-like feature on its bracket. Therefore, we find no basis for the doctrine of equivalents.

    **C.**    **Support Plate Connected to Support Fins on One Side and a Blade and Support Member on the Opposite Side**

The final contested claim that we will consider is in claim 7 and states: "wherein the support plate is connected to the support fins on a side and connected to the blade and support member on an opposite side." (Doc. 41-2, p. 8). Beginning, as we must, with claim construction, we note that the specification defines support fins as "[p]referably … taper[ing] inwardly from an end connected to the cylinder toward an end connected to the support plate." (*Id.* at 7). Although this language is somewhat unclear, the drawings provide clarification. The drawings show fins that abut the hollow cylinder on one end and extend diagonally down toward the bottom of the support plate. They gradually taper so that the end that is toward the bottom of the support plate is virtually flush with the surface of the support plate. The fins only connect to the hollow cylinder at the top end. These fins, according to the unambiguous language of the claim, are on the

opposite side of the support plate from the support member and blade. Thus, we find that claim construction is clear.

Looking at the Ames bracket under a theory of literal infringement, we find that the fins on the bracket are not on the opposite side of the support member and blade, but are on the same side. JM argues that the Ames bracket has fins on the hollow cylinder opposite the support member. These allegedly infringing fins, however, are *entirely* on the hollow cylinder. No parts of those fins touch the support plate. That clearly is inconsistent with the language of the claims and specification. Therefore, we find no literal infringement on this claim.

With respect to infringement by the doctrine of equivalents, Ames once again asserts prosecution history estoppel. The USPTO had rejected JM's application as being unpatentable over a prior design patent (identified as the Yacobi patent). Yacobi teaches fins on the same side as a support member. While JM amended claim 1 to "overcome" the USPTO rejection, JM also added new claims "in light of" the rejection. One of the claims JM added was the claim at issue. We take caution to consider that the claim at issue was not added to overcome a rejection. Prosecution history estoppel clearly applies to "amendments made to avoid the prior art, or otherwise to address a specific concern – such as obviousness – that arguably would have rendered the claimed subject matter unpatentable." *Warner-Jenkinson*, 520 U.S. at 30-31. The application is less sure

where the amendment is not *necessary* to overcome a rejection, as seems to be the case here. We can reasonably infer that JM chose to add the new claim limitation to teach fins on the opposite side of the support member and blade to differentiate Yacobi, with its fins on the same side as the support member. The burden is on JM to show why the new claim is not estopped from supporting infringement by the doctrine of equivalents, but JM has failed to meet that burden. Given two opportunities to respond to Ames's assertion of estoppel, JM called the argument "moot" because JM asserts that the claim is literally present on Ames's bracket. In the absence of any evidence, or even argument, to the contrary, we will presume that JM surrendered any broader claims. *See Festo Corp.*, 535 U.S. at 740.

## IV. CONCLUSION

For the foregoing reasons, we find no infringement, either literal or through the doctrine of equivalents, in the Ames bracket. Therefore, we shall grant Ames's Motion for Summary Judgment and deny JM's Motion for Summary Judgment.

An order commensurate with our findings will follow separately.

                                        s/ John E. Jones III
                                        John E. Jones III
                                        United States District Judge